[Sac. No. 2765. In Bank.—July 26, 1921.]

# E. E. OVERSTREET, Appellant, v. HULETT C. MERRITT, Respondent.

[Sac. No. 2875. In Bank.—July 26, 1921.]

# E. E. OVERSTREET, Respondent, v. HULETT C. MERRITT, Appellant.

[1] CONTRACT—FORMATION OF BUSINESS ASSOCIATION—DAMAGES UPON BREACH.—Where one of the parties to an agreement for the formation of a business association failed and refused to carry out the terms of the agreement and thereby deprived the other party of all opportunity to make good in the proposed business, the former became liable to the latter in damages for any loss suffered by the latter as the natural result of the default, and which was within the reasonable contemplation of the parties in entering into the agreement.

[2] ID.—PERFORMANCE OF CONTRACT—LOSS FROM ABANDONMENT OF ESTABLISHED BUSINESS—PROPER ELEMENT OF DAMAGES.—Where in an action to recover damages for the failure and refusal of the defendant to carry out the terms of a contract for a business association with the plaintiff, it is shown that the plaintiff abandoned an established and profitable business conducted by him in order to perform his part of the contract, and that the defendant had knowledge of the nature and general extent of such business, the loss sustained by the plaintiff in sacrificing such business and which was not recompensed from the new business was a proper element of damages.

[3] ID.—BAD FAITH OF DEFAULTING PARTY—MEASURE OF DAMAGES.—One who in bad faith violates his contract is liable for all damages traceable to the breach, including even those which could not be foreseen at the time of making the contract.

[4] ID.—BREACH OF CONTRACT TO FORM BUSINESS ASSOCIATION—PROPER MEASURE OF DAMAGES.—In an action for damages for breach of a contract to form a business association, the proper measure of damages in the absence of any means of determining the value of the prospective profits of the contemplated business was the loss sustained by the plaintiff in preparing to carry out his part of the contract, less the advances of money shown to have been made to him by the defendant.

[5] ID.—EVIDENCE—EARNINGS AFTER RE-ESTABLISHMENT IN BUSINESS—MATTER OF DEFENSE.—In such an action there was no error in sustaining an objection to a question asked the plaintiff on cross-ex-

amination as to the amount of the plaintiff's net earnings after he had re-entered business, where the witness had not been questioned as to the matter on direct examination, the same being matter of defense.

APPEALS from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

Farnsworth & McClure and Frank Freeman for Appellant in No. 2765 and for Respondent in No. 2875.

C. W. Pendleton, Howard S. Lewis and Anderson & Anderson for Respondent in No. 2765 and for Appellant in No. 2875.

SLOANE, J.—Both parties appeal from the judgment in this action. The main point in controversy is the measure of damages, neither party being satisfied with the judgment of the trial court in this particular.

The action is one to recover damages for failure and refusal of defendant to carry out the terms of a contract for a business association between the parties.

The findings cover the history of the transaction as determined by the trial court under the pleadings and evidence, as follows:

That for many years prior to about August, 1913, plaintiff was engaged in the business of buying and selling cattle at National Stock Yards, in the state of Illinois; that by a great expenditure of money, labor, and time, plaintiff had built up a large and very profitable business from which plaintiff made profits of twenty thousand dollars cash each year of the last three years during which he was engaged in said business, so that at the time said business was disposed of, as hereinafter found, said business and the goodwill thereof was of the value of one hundred thousand dollars. That said business was personal in its character and that no person other than the plaintiff could take advantage of the goodwill or benefit thereof, and that in the absence of plaintiff's continued personal attention the business would become, because of such character, of no value to him; that plaintiff was at all times mentioned, and now is,

unusually competent to manage the cattle business generally, and was a well-versed and thoroughly competent man, unusually fitted to manage and control the cattle business as agreed to be entered into by plaintiff and defendant as hereinafter found and stated.

That the defendant at all times from the first day of November, 1912, to August, 1913, represented to plaintiff that he, defendant, was anxious to enter into the business of importing cattle from other states in the United States and from Mexico, into California, and of breeding, fattening, and selling the same, and of breeding and raising cattle in California, all for the purpose of sale, and of selling the same for profit. That defendant further represented to plaintiff that he, defendant, was a man of great wealth and that he owned and possessed property of great value; that he was amply able, willing, and desirous at any time to draw and use for all the purposes of the proposed business of plaintiff and defendant large amounts of money if plaintiff would engage in such business with defendant. Defendant further represented to plaintiff that he had for many years been seeking a man having the qualifications and characteristics that he knew plaintiff had, in order to induce such a man to become and be known to the world as his business associate during his lifetime; that plaintiff was that particular man; that defendant sought plaintiff as a business associate more because of his social and personal qualities than for the great profits he, defendant, expected to make from such proposed business association with plaintiff. Defendant further represented that he was the owner of a ranch in the county of Tulare, state of California, known as the Tagus ranch, claimed by experts to be the best and richest alfalfa ranch in the known world, consisting of about two thousand eight hundred acres of land capable of producing an immense quantity of a superior quality of hay, all of which ranch and its products defendant promised to devote on advantageous terms to the uses of the proposed business and that from such use large profits would be made in said business; that he owned contracts for the purchase of beet pulp in said Tulare County from which a profit of twenty-five thousand dollars to thirty-seven thousand five hundred dollars could be made each year, and that he controlled a large tract of land adjacent to said Tagus ranch

from which a profit of one hundred thousand dollars could be made, both of which said last-named profits and the profits and the benefit of its properties and opportunities for the making of said profits, he promised to assign and turn over to the business to be organized and managed by said plaintiff. Defendant promised that he could and would, at any time plaintiff desired, furnish the funds to use as plaintiff thought best in such proposed cattle business of plaintiff and defendant. Defendant further agreed that if plaintiff would dispose of and abandon his cattle business, hereinbefore described, at once and come to the state of California to live, and would engage in said proposed cattle business with defendant, and manage the same, that he, defendant, would furnish one hundred thousand dollars in money, from his own funds, for capital to engage in said proposed cattle business of plaintiff and defendant, and would furnish for the plaintiff one-third of the said one hundred thousand dollars capital, provided plaintiff would execute his note to the defendant therefor for such time as plaintiff desired, which said note would bear interest at the rate of five per cent per annum; that said business should be so managed and controlled by said defendant that plaintiff should be appointed manager thereof, should receive a salary of six thousand dollars per year from the funds of the same, and should also receive payments in advance of plaintiff's profits from the said business amounting to the sum of four thousand dollars per year, with interest at five per cent per annum, until such time as the same would be repaid to the defendant from plaintiff's share of the profits of said proposed business when the same were realized. Defendant further represented to the plaintiff that, by means of the foregoing, a large business could and would be built up and operated whereby profits would be made of more than one hundred thousand dollars annually.

That plaintiff believed the said representations of the defendant and that defendant intended to keep and perform the said promises and agreements so made, and so believing and relying thereon, and for no other reason, plaintiff agreed with defendant to enter into the said contract and business and to do and perform all the things provided for plaintiff to do and perform in connection therewith, and on or about July 1, 1913, plaintiff agreed with the defend-

ant to dispose of plaintiff's said business as best he could, and in the event of failure to dispose of the same to abandon said business, if necessary, in order to enter at once into the proposed business agreement with defendant.

That plaintiff was unable to dispose of his said business hereinabove described, and in order to conform to his part of the agreement with defendant was compelled to, and did on or about the first day of August, 1913, abandon the said eastern business, receiving therefor only the actual moneys invested therein and the theretofore earned profits therefrom, and because of the said representations, agreements, and promises of the defendant and the belief of the plaintiff therein, and in reliance thereon, and in order to perform his part of said proposed agreement, removed his residence from the city of St. Louis to the state of California, for the sole purpose and intention and expectation of carrying out the agreement with defendant, and that at all times since said agreement plaintiff was ready, willing, able, and anxious to in every respect perform his contract with the defendant, and at all times offered so to do.

That plaintiff often demanded that defendant perform his part of said contract, but that defendant refused so to do and abandoned the same, and without reason therefor refused to perform any part thereof; that the promises of defendant were made and his agreement was entered into by him with the fraudulent purpose and intent not to keep the same, but for the sole purpose of inducing plaintiff to abandon and give up his home and business in the east and of inducing him to remove to California with the hope and belief on the part of defendant that when thus deprived of his business and residence plaintiff would be compelled for a salary to assist in founding a business of farming and cattle-raising for the profit of defendant and his son.

That defendant did pay to or cause to be paid to plaintiff the sum of five hundred dollars a month for a period of twenty-two months, amounting in all to the sum of eleven thousand dollars, and did pay to or cause to be paid to plaintiff from time to time the further amount of four thousand dollars a year until the amount of $5,387.46 had been paid to plaintiff in the manner agreed upon by plaintiff and defendant, and that such payments of salary and such advance payments were not made in good faith, but

were made by defendant for the purpose and with the intent to deceive plaintiff and induce him to believe, and plaintiff did believe, that the same were made for the purpose and with the intent on the part of defendant to carry out said agreement between plaintiff and defendant, and with the purpose and intent by defendant to induce plaintiff to remain and conduct defendant's business for him. That because of such payments and pretense and the belief induced that defendant was delaying the commencement of said business for good cause, plaintiff did devote his time and endeavors to defendant's farming and cattle-raising business, but that plaintiff was given no personal interest in said business, and there was an entire refusal and failure on the part of defendant to carry out his part of the contract.

Most of the allegations and findings setting out the contract between plaintiff and defendant are sustained by correspondence between the parties, consisting of letters from defendant to the plaintiff giving in considerable detail the resources and equipment of defendant by way of his alfalfa ranch, beet pulp contracts and other facilities for producing and acquiring feed for fattening cattle, and proposing the terms on which he desired to associate plaintiff with him in the business, and urging him to dispose of his eastern business and accept defendant's proposition. This proposal was accepted by plaintiff through a telegram to the defendant.

The only part of the arrangement left open by this correspondence was that relating to plaintiff's contribution to the capital fund of the venture.

Defendant in his written proposal suggested a capital investment of one hundred thousand dollars, of which amount he would advance one-third for himself, and one-third for his son, the plaintiff to provide the other one-third. The telegram of acceptance from plaintiff proposed a modification of this contribution. The message was as follows:

"Letter twelfth received feeding company do not need hundred thousand east capital can arrange that later I need income until company gets going if company allows me six thousand salary for one year from June first I accept and will be there by May first I have complete confidence

in you am not bartering but above is necessary wire answer.''

Replying to this the defendant wired the following:

''Terms outlined your telegram March twenty second accepted and satisfactory.''

This was, and we think properly, held by the trial court to have left open for future negotiations the matter of contribution to the capital stock, and made admissible the introduction of parol evidence as to subsequent agreement between the parties on this point.

The testimony as to the agreement thereafter reached was conflicting, but plaintiff testified, and was corroborated by other evidence, to an oral agreement that defendant would advance all the money needed, taking plaintiff's note at five per cent interest for his one-third thereof payable at such future time as plaintiff desired.

In this, as in other matters of conflict in the evidence, plaintiff's testimony, if not directly corroborated by other witnesses, finds support in the representations contained in defendant's letters as to his extensive resources, and in the prolific liberality of his proposals to provide all necessary financial support and assurances of great profits from the proposed business.

Without further discussion of the evidence we think it sufficient to say that the allegations of the complaint and the findings of the court are fairly supported by the evidence as to all the representations, terms and conditions of the contract, and as to the refusal to carry out the same on the part of defendant.

The only point open to discussion is the evidence as to damages suffered by plaintiff, and the rules of law governing the same.

The plaintiff presented his cause of action on the facts as stated, in two counts, one for a recovery of damages for the loss sustained by the sacrifice of his eastern business in order to enter into the association with defendant; the other, for damages from loss of prospective profits through defendant's refusal to carry out the contract.

This latter division of the complaint may be ignored. There was but one cause of action stated in either or both counts of the complaint, and plaintiff is entitled to but one recovery for the breach of the contract to be measured by

the "amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom." (Civ. Code, sec. 3300.)

Indeed, it may be doubted if the second count states a cause of action. · It sets out the contract and its breach and the representations of defendant as to the great profits to be derived from the proposed business, but nowhere alleges that a profit might or would have resulted as represented had the contract been carried into effect, nor does it give any data upon which a finding of prospective profits might be based. The findings under the second count are defective in the same way, there being no findings of fact as to actual or potential profits upon which to base the conclusion that plaintiff was damaged by the default of defendant.

However, while the court made a finding that plaintiff was damaged by the acts complained of in the sum of thirty thousand dollars under the second count, no judgment was given under this finding, and had judgment been given thereon it could not be sustained in connection with a judgment on the other count, for the reason that plaintiff had but a single cause of action and was entitled to but one recovery.

For the reasons stated plaintiff was not entitled to judgment on the second count, and we think the complaint and finding thereof may be entirely disregarded on this appeal.

The first count stated the same contract and breach thereof, with the added averments of the loss occasioned to plaintiff by reason of the sacrifice and abandonment of his eastern business at the instance of defendant in order that he might enter into the business association with defendant.

Plaintiff cannot recover the actual fruits of the business which was never consummated. He may, however, recover damages caused by defendant's breach of his contract to establish such business. One element of that damage is that through reliance upon his contract with defendant he was induced to incur certain losses and expenses which, while they were within his contemplation as part of his investment in the new business, have become a dead loss to him now that the business has failed to materialize.

Of course, if defendant had carried out his part of the contract and established and carried on the new business in

good faith he would have assumed no liability to plaintiff for any loss incurred from the sacrifice by plaintiff of his old business, even though the new venture had proved wholly unprofitable. That was a risk plaintiff was assuming on the strength of the prospects offered by his contract with defendant of realizing the greatly increased possibilities held out to him by defendant's representations.

[1] But when defendant by the breach of his agreement deprived plaintiff .of all opportunity to make good on the new venture, he became liable in damages for any loss suffered by the plaintiff as the natural result of such default, and which was within the reasonable contemplation of the parties in entering into this agreement.

The true measure of that recovery would be the amount the plaintiff would have realized under the contract if it had been faithfully carried out less the necessary expense to him in performing on his part. But in a business of the character contemplated by the parties it is evident that the profits thereof were largely speculative. The business might have resulted in the one hundred thousand dollars per year net income that defendant estimated and held out to plaintiff as an inducement to surrender his former employment and investments, or it might have resulted in an actual loss.

Defendant cannot, however, on this account, after having held out these glowing assurances to the plaintiff, and after failing and refusing to allow the plaintiff an opportunity to make good on them, be allowed to avoid recompensing him both for the sacrifice of his old business, because the loss is too remote, and for the failure of profit on the new because it is uncertain and speculative.

The defendant in any event should be estopped from disputing that the profits of the new business would have at least recouped the loss of the old. (*Cederberg* v. *Robison,* 100 Cal. 93, [34 Pac. 625] ; *United States* v. *Behan,* 100 U. S. 338, [28 L. Ed. 168, 4 Sup. Ct. Rep. 81, see, also, Rose's U. S. Notes].)

The evidence here discloses that defendant had knowledge of the nature and general extent of plaintiff's established business, and it is alleged in the pleadings and found by the court that defendant was aware that the plaintiff was sacrificing, and to an extent abandoning, such established business in order to accept the contract with defend-

ant, and was indeed urging him to adopt such a course, on the representations that the assured profits of the new enterprise justified such sacrifice.

[2] The contract may be said to have been entered into with this as one of the recognized conditions, and under such circumstances the rule is well established that the loss thus sustained, and unrecompensed from the new venture because of defendant's default, is a proper element of damages in the case.

The general rule covering this class of damages is established by a very long line of decisions founded on the leading case of *Hadley* v. *Baxendale,* 9 Ex. 341, 26 Eng. L. & Eq. 396, [156 Eng. Reprint, 145], where it is said: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as would fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from the breach of contract under these special circumstances so known and communicated." The rule in *Hadley* v. *Baxendale* has been discussed in a multitude of cases and generally followed.

What Sedgwick on Damages refers to as the leading case in this country, *Griffin* v. *Colver,* 16 N. Y. 489, [69 Am. Dec. 718], states the rule thus: "The broad general rule in such cases is that the party injured is entitled to recover all his damages including gains prevented, as well as losses sustained, and this rule is subject to but two conditions: the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation, and they must be certain

both in their nature and in respect to the cause from which they proceed."

The above case arose upon the failure of a contracting party to deliver a steam engine which he knew was to be used for a special service. It was held that the loss of profits could be recovered for the delay because the contractor had notice of the consequences that would follow. (*Messmere* v. *New York Shot & Lead Co.*, 40 N. Y. 422; *McHose* v. *Fulmer*, 73 Pa. St. 365.)

Sedgwick on Damages states the rule as adopted from *Hadley* v. *Baxendale, supra,* as meaning that the plaintiff may recover such damages as normally result from the breach of the contract, or he may in addition allege and show certain special facts to have been known to the defendant at the time of the contract which would give notice to him that a breach of the contract would result in an otherwise unexpected loss, and in such case the plaintiff may also recover his special loss. (1 Sedgwick on Damages, sec. 146; *Hawthorne* v. *Siegel*, 88 Cal. 159, [22 Am. St. Rep. 291, 25 Pac. 1114].)

The same author further says at section 182 of the same volume: "Where it clearly appears that the defendant has interrupted an established business from which the plaintiff expected to realize profit, the plaintiff should recover compensation for whatever profit he makes it reasonably certain he would have realized." (*Barnes* v. *Berendes,* 139 Cal. 36, [69 Pac. 491, 72 Pac. 406].)

So, as was held in *Arkansas Val. Town & L. Co.* v. *Lincoln,* 56 Kan. 145, [42 Pac. 706], where the defendant wishing the plaintiff to come into a new town, with his business already established in another place, guaranteed that a railroad would come to the new town, and plaintiff accordingly abandoned his old business and moved to the new location, and because of the railroad not being built the new business was unsuccessful, it was held that he could recover for the loss in making the change and show the profits of the former established business to prove his damages.

Likewise, where a physician abandoned his profession to become agent for the sale of a patented article, giving his entire time to it, and the contract to furnish him the article was broken by defendants, it was held that he could recover not only the amounts he had expended in the busi-

ness, but the professional earnings he would otherwise have made. (*Meylert* v. *Gas Consumers' Benefit Co.*, 14 N. Y. Supp. 148.)

The fact as disclosed in the findings of the court in this case that the abandoned business is one depending for its value upon the personality of the owner does not deprive it of a value, the loss of which should be compensated. The supreme court of Illinois in *Chapman* v. *Kirby*, 49 Ill. 219, says: "We all know that in many, if not all, professions and callings, years of effort, skill, and toil are necessary to establish a profitable business, and that when established it is worth more than capital. Can it be said, that a party deprived of it has no remedy, and can recover nothing for its loss, when produced by another? . . . And to measure such damages, . . . what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, . . . "

In the instant case we not only have the liability arising from the breach of the contract which was the consideration for the abandonment of his former business by plaintiff, but the court finds that the inducements held out to plaintiff for making his change of occupation were in bad faith and with no intention of their fulfillment.

[3] One who in bad faith violates his contract is liable for all damages traceable to the breach, including even those which could not be foreseen at the time of making the contract. (*Beck* v. *Fleitas*, 37 La. Ann. 492; Civ Code, sec. 3333.)

Recognizing the element of bad faith this court has said in *Kline* v. *Guaranty Oil Co.*, 167 Cal. 476, [140 Pac. 1]: "The element of bad faith would clothe a court, upon plain principles, with the power to fix damages according to the detriment shown by the existing special circumstances of the case. . . . The damages, therefore, would be those which would ordinarily and proximately follow from the breach of such a contract under the peculiar circumstances which were known to both parties."

[4] We think the trial court in this case adopted the proper measure of damages in the absence of any means of determining the value of prospective profits of the contemplated business; this was the loss sustained by the plaintiff in preparing to carry out his part of the contract, less

the advances of money shown to have been made to him by the defendant.

The finding as to damages was as follows: "That by reason of the acts of the defendant hereinbefore described plaintiff has been damaged by defendant in the sum of fifty thousand dollars over and above all sums received by the plaintiff from or through the defendant."

The court has attempted here to fix a value by way of compensation to the plaintiff upon the loss incurred by the sacrifice of his former business in entering upon the contract with defendant. We do not agree with the contention that in doing this the court is confined to the mere loss of profits for the period he was engaged with defendant. He not only sacrificed such profits for the time referred to, but obviously was placed at a disadvantage in returning to that or a similar line of business after a couple of years' absence. The value of any line of occupation depending upon the patronage of a clientele largely gathered from the permanency and reputation of the business and its management is not limited by the yearly or monthly income. It is a capitalization of the reputation, skill, and personality of the owner and cannot be laid down and taken up again after years of suspension without a serious loss to its earning capacity.

To reach a satisfactory determination of the loss sustained by plaintiff through the sacrifice of the business interests involved presents a very difficult problem, but the defendant having caused the loss by his own wrongful conduct cannot be absolved from liability because the damages are not susceptible to exact measurement. (*Northern Light Co.* v. *Blue Goose Co.,* 25 Cal. App. 292, [143 Pac. 540]; *Shoemaker* v. *Acker,* 116 Cal. 239, [48 Pac. 62]; *Cederberg* v. *Robison, supra,* 100 Cal. 99, [34 Pac. 625].)

It appears that the business in which plaintiff was engaged and which he claims to have sacrificed in order to enter upon the contract with defendant was carried on by two corporations and a copartnership. Each of these branches of the business was conducted as an association of a few individuals, and dependent for its success upon the personal efforts and ability of the members, rather than upon the investment of capital.

Defendant earnestly contends, however, that it does not appear from the evidence what part of the income or of the value of the business was represented by plaintiff's stock in the corporations, and what by the personal participation of the plaintiff.

It is true that the only data the trial court had to go on was the testimony as to the general character and conduct of the business, and plaintiff's annual net income from all enterprises for a series of years, which amounted to over twenty thousand dollars annually. Plaintiff sold his stock in the two corporations on abandoning the business, and received therefor precisely the amounts of his cash investment. It is evident, therefore, that he suffered no loss of cash capital. Just what this amount aggregated is not shown, but it is apparent that it was but a small element of the earning capacity of the business as a whole. It is fair to assume that with these conditions in view the trial court based its findings of a loss of fifty thousand dollars to the plaintiff upon the value of plaintiff's personal experience, acquaintanceship, and association in the business. This was a capital asset which could not be sold and which could not in the nature of things be transferred to a new business after a lapse of two or more years. In other words, the plaintiff sacrificed not only the proportion of the income incident to his personal connection with the old business for the two years he was in California with the defendant, but suffered the handicap of having to build up a new clientele and patronage when he thereafter returned and started anew in the old field.

The nature of his business was such that the situation may be likened to that of a lawyer or physician who, as the leading partner in a well-established firm, has abandoned this connection to enter a new business in another state. It is a fact confirmed by common experience, that if he returns to the same field after years of absence to re-enter the work of his profession, the loss from the abandonment of his established business is not compensated by making up the difference in his income for the period of his absence, but he must also face the handicap of building up a new practice.

We are of the opinion that the facts in evidence here afforded a basis for fixing with reasonable fairness the detri-

ment suffered by the plaintiff through defendant's fault, and that the amount so found is not excessive under all the circumstances of the case.

The only other point raised on the appeal which we deem it necessary to refer to is the assignment of error upon the ruling of the court in sustaining an objection to defendant's query to the plaintiff as to the amount of plaintiff's net earnings in the year 1915, after he had re-entered business in St. Louis.

The question was asked on cross-examination, and objection was sustained thereto, on the ground given by the court that it was not proper cross-examination.

[5] We think this ruling was correct. The matter was relevant only for the purpose of mitigation or recoupment of defendant's liability, and was a matter of defense. The witness had not been questioned on direct examination as to this matter, and the burden was on defendant to establish such earnings by way of defense. (*Lally* v. *Cantwell,* 40 Mo. App. 44, 50; Wood on Master and Servant, 245, 246; *Hahn* v. *Mackay,* 63 Or. 100, [126 Pac. 12, 991]; *Howard* v. *Daly,* 61 N. Y. 362, [19 Am. Rep. 285]; *Gillis* v. *Space,* 63 Barb. (N. Y.) 177.)

The judgment is affirmed.

Shaw, J., Angellotti, C. J., Shurtleff, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred except Angellotti, C. J., who was absent.