[Civ. No. 9330. Third Dist. Apr. 17, 1959.]

BERNARD H. GAINER et al., Plaintiffs and Appellants, v.
A. D. STORCK, Defendant and Appellant.

Robert E. Reeser, Harold R. Farrow and Robert R. Barton for Plaintiffs and Appellants.

Appelbaum, Mitchell & Bennett for Defendant and Appellant.

VAN DYKE, P. J.—This is an appeal from a judgment for plaintiffs in an action for damages resulting from upset damage to a truck caused by faulty brake repair and from loss of use. The contentions of appellant Storck are that he was denied a fair trial through plaintiffs' wrongful injection into the case of the matter of liability insurance, and that damages were improperly proved and were excessive. Since Bernard H. Gainer appears to have been in charge of all activities following the accident and, alone of the two plaintiffs, testified at the trial, we shall refer to plaintiffs in the singular as "Gainer."

Gainer's first amended complaint contained two counts, one against Storck for negligence in repairing the brakes on Gainer's truck, and the second against Storck's insurance carrier for breach of contract. The contract count alleged that one Edmonds, an adjuster employed by Storck's insurance carrier, promised Gainer he would be paid all of the cost of repair and damages for loss of use; that this promise was breached. The amount of damages alleged in each count was identical. A demurrer to the second count was sustained and Gainer filed a second amended complaint. This time Storck's insurance carrier was dropped as a party defendant, but the second count contained allegations that one Edmonds, a named defendant later dismissed from the case, acting as the authorized agent of Storck had admitted the liability of Storck and, for Storck, had promised that Storck would pay for repairs and loss of use; that later this contract obligation had been breached by Storck. As to agential authority of Edmonds to bind Storck, it was Gainer's theory that Edmonds was an employee of Storck's insurance carrier, that the policy of insurance authorized the insurance carrier to act for Storck with regard to plaintiffs' claim, which it did through Edmonds, its claims adjuster, and that Edmonds' dealings with Gainer bound Storck. The cause came on for trial on the second amended complaint and Storck's answer thereto. At the opening of the trial and before evidence was taken Storck moved for summary judgment as to the contract count. The motion was denied. Claiming that the joinder of the insurance carrier in the first instance and the pleading of the contract count in the second amended complaint against Storck only was all sham and pretense for the purpose of injecting insurance into the case to the prejudice of Storck, it is argued here that the denial of Storck's motion for summary judgment on the second count, followed by references to insurance during

the opening statement and during the taking of testimony resulted in the trial being so unfair to Storck as to require reversal in the interest of justice.

A study of the whole record has led us to the conclusion that although the record strongly suggests there was on the part of Gainer's counsel a studied effort to try the insurance company instead of Storck the plan did not in fact succeed and that the trial was fair. To begin with, it is not contended on appeal that the evidence of Storck's negligence in repairing the brakes on Gainer's truck was not sufficient to warrant the jury in finding that it was that negligence which caused the overturn of Gainer's truck when put in operation shortly after it had been delivered to him for use. The evidence upon the matter of negligence and proximate cause is ample and persuasive. Next the references to insurance made in the presence of the jury were few. The trial court appears to have been diligent to prevent unwarranted references to insurance, and prompt to admonish the jury to disregard those that occurred. When plaintiff approached the proof of the contract count the court ruled that agency must be first proved and that proof could not be made through or by reference to the insurance policy. No other proof was attempted and Gainer was nonsuited as to the contract count. The ruling on nonsuit was made out of the presence of the jury.

Storck claims that Gainer's counsel also injected insurance into the case in his opening statement. It is admitted that he did not use the word "insurance" at all, but it is claimed that he secured the same effect by innuendo. Having described the accident, counsel stated that Gainer got in touch with Storck, told Storck about the accident and then went back to San Leandro, where he lived "because he had a policy of insurance on his own truck for collision; $500 Deductible clause; he. wanted to get in touch with his own company." This, argues appellant, inferred that there was a second insurance company, to wit: Storck's company. Counsel then stated that Gainer asked Mr. Reeser, an attorney, to take over, and Mr. Reeser got in touch with the "representative of Storck's." This again, argues appellant, inferred insurance. The statement continued, counsel saying that after Mr. Reeser "got in touch with the representative of Storck's . . . they agreed they would take the truck . . . inspect the brakes, and if they found the brake job was the fault of the accident, then Mr. Gainer would be reimbursed . . . ." Counsel said the inspection showed the brakes were faulty and then Mr. Reeser "got

in touch with the man who represented Mr. Storck and at that time they talked about the matter and Mr. Edmonds, the agent then of Mr. Storck, said, 'I think that your bids are too high; maybe they should salvage the truck, sell it for junk, it is not worth fixing.' '' Counsel further said that finally the agent of Storck told Storck to send the truck to a garage in Oakland, ''have it fixed, bring us the bills and we will pay it.'' That after the repairs and ''after the agent had been furnished with information as to how much money was lost per day as a result of not having the truck in the business and how many days it was estimated it would be out of use, this agent then said, 'No, we won't pay that. As a matter of fact, we won't even pay to have the truck repaired unless you agree to take only so much money' which was, oh a third, maybe, or a half of what was earlier agreed upon.'' The allegations of the second count alleging contract liability of Storck for his agent's promise were in issue and we see nothing unfair about the statement nor any justification for Storck's claim that from the statement the jury must have drawn the inference there was an insurance carrier back of Storck. Appellant argues as follows: That although the word ''insurance'' was not mentioned in plaintiffs' counsel's opening statement, only the most naive and stupid juror would have failed to recognize that the insurance company had been contacted by Attorney Reeser, representing the plaintiffs, when he spoke of plaintiffs getting in touch with Storck's representative and then of Gainer getting in touch with his ''own company.'' It may be that the jury, or some jurors, interpreted the statement as indicating Storck was insured. But counsel had a right to speak of the contract count, and did so without any direct reference to insurance. Hence, if any juror jumped to a conclusion about insurance it was not because counsel was guilty of misconduct. He had a right to say what he said.

During the trial there were only two instances in which the matter of insurance was referred to. The first was during the direct examination of Gainer. After the witness had described the accident, the following occurred: ''Q. Now, what did you do after that? A. Well, the truck was crossways of the road, they got it out of there; then I come back in to Storck's garage and notified them, Mr. Storck's son-in-law, just what had happened, and—— Q. Tell me this: Did Mr. Storck's son-in-law tell you that he would do anything about it? A. He reported it to his insurance—— MR. FARROW [Gainer's Counsel]: Just a moment. Don't say anything—he reported it to

someone, is that what you were going to say? A. Yes. Q. Did he do anything else about it? A. No." The second reference occurred during the cross-examination of defendant Storck. "MR. FARROW: Q. Now, did, on any occasion did someone come to your shop and talk to you about this? A. That is right. Q. And did they ask you about the day the truck was put in there for repair work? A. Yes, I knew that. Q. Did they ask you what you did? A. That is right. Q. They wrote down what happened? A. Can I explain? Q. Yes, sir, go ahead. A. Mr. Gainer did come in and tell us about it, and we carried adequate insurance to cover—— THE COURT: I don't want the subject of insurance to enter this case at all, and I will instruct the jury that this is an action between Gainer and Storck. No insurance company is involved, nor anybody else in the Second Amended Complaint which we are proceeding on, and mention of insurance companies are to be—an insurance company for Mr. Storck, are to be disregarded by you, and you consider Mr. Storck as the defendant in this action. MR. FARROW: Now, could I ask the Reporter to read the last question and the answer? I think it was not complete. As I understand Your Honor's ruling, Your Honor's statement, it was not that he could not answer this question. THE COURT: That is my ruling. MR. BENNETT [Counsel for Storck]: I think the answer was not responsive. He asked if he could make a statement. THE COURT: The answer will be stricken out. The jury is to disregard the answer, without—about any insurance company. MR. FARROW: All right. Mr. Reporter, will you read the last question put to this witness? (Thereupon the Court Reporter does the same.) MR. FARROW: Now, let's put it this way, Mr. Storck: Q. Besides Mr. Gainer, some other persons came to your shop and talked to you about this repair job, didn't they? A. No, not me."

In ruling on the question of prejudice by reference to insurance the following must be taken into consideration. First, there was ample proof of liability. This is not a case where the weight of the evidence on that issue approaches even balance. Next, the references as to insurance in counsel's opening statement are at most inferential and not direct, and the references to insurance during the taking of testimony were volunteer statements by witnesses. The court was prompt to admonish the jury to disregard anything said about insurance. Next the court instructed the jury that they were to disregard such references, that no insurance company was a party to the action, and they were not to consider the case as one other

than a case between Gainer and Storck. Finally, prejudice was urged during presentation of a motion for a new trial and the trial court denied the motion. The whole record considered, this court cannot say that defendant was subjected to an unfair trial or that he suffered prejudice through reference to insurance.

 Storck contends that the wrong measure of damages was used, that the damages awarded were unreasonable, that Gainer failed to mitigate damages, and that the damages awarded included wrongfully an amount for Gainer's personal services. Gainer sued for the cost of repairs which he was required to pay in the sum of $500 and there is no dispute as to that item. The dispute concerns the amount awarded for loss of use in the sum of $4,880.54. The proof was confined to evidence of the profits which Gainer would have received if his truck had been available for use. Gainer had two trucks of the same hauling capacity and had been using both in contract work for some time prior to the damage to one. He testified that he would have used this truck a total of 88 days during the time it was being repaired, on the same jobs on which the other truck was used; that he kept a record of the earnings and expenses of the other truck during these days; that the gross amount earned by the truck in use was $5,642.64; that the expenses of operating that truck was the amount he testified to for each item of expense and that the net, after deducting all expenses, was the sum of $4,947.64. The jury awarded slightly less. He introduced in evidence his records and books of account and had marked for identification a summary which he prepared therefrom showing the accounting by which he arrived at the net amount of profits he would have received from use of the damaged truck. Appellant introduced no evidence on the subject of damages. He contends here that the only and exclusive measure of damages properly applicable in this case was the rental value of the truck, but he introduced no evidence as to what that rental value was.

 In *Grupe* v. *Glick*, 26 Cal.2d 680, 692-693 [160 P.2d 832], it is stated:

". . . [w]here the operation of an established business is prevented or interrupted, as by a tort or breach of contract or warranty, damages for the loss of prospective profits that otherwise might have been made from its operation are generally recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the past volume of business and other provable data relevant to

the probable future sales. . . . On the other hand, where the operation of an unestablished business is prevented or interrupted, damages for prospective profits that might otherwise have been made from its operation are not recoverable for the reason that their occurrence is uncertain, contingent and speculative. . . . But although generally objectionable for the reason that their estimation is conjectural and speculative, anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability. . . . All of these cases recognize and apply the general principle that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent.'' (See also *Edwards* v. *Container Craft Carton etc. Co.*, 161 Cal.App.2d 752 [327 P.2d 622]; *Natural Soda Products Co.* v. *City of Los Angeles*, 23 Cal.2d 193, 199 [143 P.2d 12]; *Lambert* v. *Haskell*, 80 Cal. 611, 618 [22 P. 327].)

 We think this was a case where damages, measured by loss of profits from the use of Gainer's truck, were properly allowable and the amount of damage so measured was sufficiently shown by Gainer's testimony. He had been the owner and operator of two trucks engaged in contract hauling, one driven by himself and one by a hired driver. He had had the trucks in operation for some time and he testified from business experience as to the profits that could reasonably be made by the use of the truck that was damaged. The proof he submitted cannot be attacked as being too remote or too speculative to support the jury's award based on loss of profits from loss of use.

 Passing from the appropriateness of the measure of damages used, appellant contends that the damages awarded were unreasonable; that they included an amount for Gainer's personal services in driving; that the period of loss of use was excessive and unnecessary; and that Gainer failed in his duty to mitigate damages. We will discuss these assignments of error together. Storck argues: ''It would seem as if something were basically wrong with the judgment for $500 property damage plus $4,880.54 for the loss of use of a truck for a maximum period of three and one-half months, which was purchased less than two months prior to the date it was damaged for $2,800.'' Elaborating upon this premise, Storck attacks the evidence in various ways and presents arguments that were no doubt addressed to the jury at the trial and to the court on motion for a new trial. However, viewed from

the standpoint of a reviewing court on appeal, the evidence substantially supports the award both as regards the amount calculated from Gainer's testimony, the only testimony addressed to the subject, and from the standpoint of reasonableness. Gainer testified as follows: ''I got the truck back on November 1st and put it to work about a week after that. I computed from my bookkeeping records the amount of days that the truck was out of work as a result of the accident and it was approximately 88 days as I recall. (Witness is shown a document.) I prepared this and I got the information from the work of the other truck which had been working on different jobs that this truck would have worked on if I had had it to work. It would have worked on the same jobs. My figures are based on the rate per hour that the truck worked and the driver's time. While the damaged truck was out of commission the income earned by the other truck amounted to $5,642.64 gross. From that I deducted oil at $5.00 per month, gasoline at $6.49 per day, tires at $20 per month, Board of Equalization tax at 3 per cent and Public Utilities Commission at one-quarter of 1 per cent. The total of these deductions from the gross amount that the other truck earned gives me $4,947.64. I did not deduct anything for repairs because the trucks had been repaired fairly well during the period I had them on the job and after I put the damaged truck back to work in November, it did not require any repair work for quite a while. Let's say about three months at which time 1 put a motor in it.'' There was introduced in evidence certain bookkeeping records concerning the operation of the companion truck during the time the damaged truck was out of use and Storck entered into a detailed analysis of these figures in an effort to show that Gainer's testimony concerning gross and net income was erroneous. Particularly Storck complained that Gainer was allowed compensation for his personal services and that this sum ought to be deducted. It cannot be said as a matter of law that some allowance could not be made for what might be called Gainer's wages that would have come to him had he been able to have both trucks operating, with himself driving one, as had been his custom. The business was his and although he continued the other truck in operation in charge of a hired driver, the jury could properly hold that included in the loss which proximately flowed from the loss of use was some amount of added income Gainer's business would have enjoyed had his way of doing business not been wrongfully interrupted. We find nothing in the record that justifies a

reviewing court in refusing to accept as within the orbit of reasonable damages any part of the sum awarded by the jury and, on motion for new trial, approved by the trial court.

On the subject of Gainer's alleged failure to mitigate damages, Storck argues that a part of the period the damaged truck was out of commission is chargeable to Gainer himself in that for a considerable period after the truck had been repaired he did not pay the repair bill and put the truck back to work. But Gainer testified that the company which repaired the truck refused to release it to him until the repair bill was paid in full; that he was unable to obtain the necessary money until November 1, 1955, at which time he obtained his truck and within a few days thereafter put it to work; that in the meantime he attempted to rent another truck, but found that none was available, whereupon he patched up an old Chevrolet, which broke down after one trip; that he tried to arrange for his employee driver to drive for someone else in the interim, but was unable to do so without losing his services when both trucks would be available; that he used his best efforts to get his truck repaired and back on the job as soon as possible and that although the second truck was earning the income he testified to this did not supply him with the necessary funds because he had to use that income for keeping the operating truck in fuel, in making payments on the conditional contracts whereunder he was purchasing both trucks and in keeping up insurance on the two trucks. In short, he didn't have the money to redeem the damaged truck from the repairman's bill until November 1st. It cannot be said as a matter of law that respondent did not make reasonable efforts to mitigate damage. Once again the argument on this point was no doubt persuasively addressed to the jury at the trial and to the trial court on motion for new trial and we see no good reason for not accepting their decisions. The evidence discloses a situation comparable to that discussed in *Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 847-848 [147 P.2d 558], wherein the court said:

"There is ample evidence to support the implied finding that plaintiff lacked the funds and financial ability which in the exercise of ordinary care would have required him to pay the repair bill. The evidence shows that at the time of the accident plaintiff was the owner and operator of a service station costing $5,000 and against which there remained an indebtedness of $500; that he was the owner of a truck and automobile upon which two or three payments of $71.48 each were yet due; and that payments on the truck were completed

a few months after the accident, while the service station indebtedness was not fully paid until just before the trial of this action on March 18, 1937. Plaintiff testified that what little capital he had after the accident was needed for the operation of his service station. . . .

"It also appears from a finding of the trial court, which is amply supported by the evidence, that plaintiff attempted and was unable to obtain the use of a substitute truck while his truck was being repaired."

We think it was entirely a question for the jury and for the trial court to determine whether or not plaintiff's efforts to mitigate damage by getting his truck back to work were all that were reasonably required under the circumstances.

For the reasons given, the judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied May 8, 1959, and the petition of defendant and appellant for a hearing by the Supreme Court was denied June 9, 1959. Spence, J., and Peters, J., were of the opinion that the petition should be granted.