[Civ. No. 26623.   Second Dist., Div. Three.   Nov. 19, 1963.]

EMANUEL LEVY et al., Plaintiffs and Appellants, v. SAM-UEL FIRKS et al., Defendants and Respondents.

Bernard Reich, in pro per., for Plaintiffs and Appellants.

Sandler & Rosen and Nelson Rosen for Defendants and Respondents.

SHINN, P. J.—Appeal from a judgment for defendants following the sustaining of their demurrer to plaintiffs' second amended complaint.

Plaintiffs brought an action which they labeled as one for declaratory relief and breach of contract. The complaint alleged that plaintiffs and defendant King "orally agreed to a joint venture purchase" of certain real property for the purpose of erecting and operating a "bowling, restaurant and bar business enterprise"; without the knowledge and consent of plaintiffs, King entered into an agreement to purchase the property; defendants Edwhite Building Company and Ebern Building Company acquired King's right to purchase the property and also acquired all the stock of defendant corporation Kingpin Lanes, Inc., which had acquired a liquor license in connection with the enterprise; defendants Firks and Alexander represented to plaintiffs that one Edmunds, or his company, had put up money for the purchase of the property and had advanced other money but wished to withdraw "subject to certain rights in defendant King and reimbursement for all moneys expended and advanced"; they, Firks and Alexander, could obtain extraordinary financing and desired "operating partners"; plaintiffs and said defendants agreed they would become joint venturers in the enterprise to acquire the interests of the other defendants and share jointly the costs and obligations of the enterprise; two corporations were to be formed, one to acquire the property and the other to lease it from the former; defendants would obtain the financing and with plaintiffs would share equally in the "required cash investment"; 45 shares of the stock in each corporation would be issued to defendants and an equal number to plaintiffs, plus an additional "override" of 10 shares of special nonvoting stock.

The crucial question and the one that is discussed in the briefs is whether the facts alleged in the complaint are sufficient to show that the parties entered into an enforceable agreement.

It is clear from the allegations of the complaint that neither plaintiffs nor defendants understood or intended this alleged oral agreement to be anything more than a preliminary step toward the negotiation of an agreement which would be reduced to writing and adequate to express the agreement

of the parties with respect to acquisition of the property, the financing, erection and operation of facilities, and the rights and duties of the respective parties in the enterprise. There was merely an agreement to endeavor to agree upon the terms and conditions of a written contract. This understanding is disclosed by additional allegations of the complaint, *viz.*: ''The said parties orally agreed to and did retain defendant Firks' attorney, Raymond C. Sandler, to render the necessary legal services to acquire the said real property and to create the necessary entities, and on July 5, 1960, plaintiff Reich on behalf of himself and plaintiff Levy wrote to Attorney Sandler and to defendant Firks as follows:''[1]

It was further alleged: ''Neither the defendant Firks nor the defendant Alexander objected to said memorandum letter

---

[1]"Sam: Please read carefully as the letter is addressed as much to you as to Ray.

"July 5, 1960

"Raymond C. Sandler, Esq.
435 North Bedford Drive
Beverly Hills, California

Re: Kingpin Lanes
Firks, Alexander, Levy & Reich

"Dear Ray:

"Enclosed site plan.

"1. The restrictions are to go out.

"2. All reference to signs is to go out.

"3. There is to be a lease to Grandview for $1.00 per year of a site for a 20' sign as indicated on the site plan.

"4. Please contact Art Edmunds for the transfer and closing of escrow.

"5. All entities are to be decided among Dick Miller, you and I.

"6. Sam Firks and Manny Levy are to talk to Art Edmunds about Froelich's contract. This is to be done before we sign any of the papers closing the deal.

"7. Consideration should be given to starting afresh so far as is possible so that we are not saddled with the King commitments and all that has gone on before. In this connection we will probably need releases from the individuals and companies heretofore involved. Manny Levy will renegotiate, if possible, with AMF.

"8. When you have advised me that everything has been tentatively set I will negotiate the contract with King on the basis of the draft that you prepared, but including an option to purchase King's interest at $25,000.00 less $12,000.00 paid to him under the employment contract. In this connection Manny suggests that King's salary be fixed at $7,500.00 per year commencing with the opening of business.

"9. Sam, George, Manny and I have agreed that Manny and I are to receive 10 per cent of the profits of both operations including the profits on any sale. This is to be evidenced by

of July, 5, 1960; on the contrary, Attorney Sandler on behalf of said defendants and on July 13, 1960, proceeded to implement the said memorandum letter by the following memorandum addressed to the defendant Edmunds, copy to plaintiff Reich, as follows:"[2]

A further allegation was that plaintiffs have performed all the covenants and conditions of their letter to Sandler except as performance was prevented by defendants, who not only failed and refused to perform but acquired the property and have been operating the facilities without the consent and to

---

special stock so that the capitalization will be as follows: 90 shares in regular stock split fifty-fifty and 10 shares in the special stock. The special stock is not to have voting rights.

"Regards.

Sincerely,

BR:gs

cc: Mr. Sam Firks, Mr. Emanuel Levy"

[2] "OFFICE MEMORANDUM
SANDLER AND ROSEN
Date: July 13, 1960
From: Ray Sandler
Subject: Kingpin Lanes

"To: Mr. Art Edmunds

"Dear Art:

"I enclose herewith a draft of the proposed agreement for your examination and approval.

"I call your attention to the conditions provided in paragraph Third. I have been in touch with Leon Kent and I am going to work our directly with him the amendment of the agreement and the substitutions referred to in subparagraph (a) of said paragraph Third. These documents may be worked out prior to the time that this agreement is executed in which event we can attach them as exhibits to this agreement.

"I understand that the negotiations with Eddie King for the modification of his agreement are under way and should be consummated in the very near future. The amendment of the Froelich agreement will be discussed with you by Sam Firks and Manny Levy. If you will send me a copy of the preliminary title report on the subject property I should be able to indicate our approval thereof without delay.

"Concurrently herewith I am submitting a draft of this agreement to Bernie Reich for his approval and if he has any comments or suggestions, I will communicate them to you. I would also like to have your comments and suggestions as soon as possible so that we can proceed to consummate the deal.

RCS:lh

Enc.

Copy to Sam Firks
        Mr. Bernard Reich"

Very truly yours,
RAY SANDLER

the exclusion of plaintiffs. It is clear from the complaint that plaintiffs are relying not upon their alleged oral agreement to engage in a nebulous business enterprise but upon the letter to Sandler and his memorandum to Edmunds and Firks.

Plaintiffs outlined their proposals to Sandler in writing and apparently gave him additional information; a copy went to defendant Firks. Sandler prepared and submitted to Edmunds an agreement for acquisition of the property by plaintiffs and Firks and Alexander. Although it was alleged that defendants did not object to the proposals, it was also alleged that they decided to and did exclude plaintiffs from the enterprise and engaged in it for themselves.

It is elementary that parties are not bound by proposals or promises they make in an attempt to negotiate a contract that is to be reduced to writing as a complete and final memorial of the matters upon which they have reached agreement, if the negotiations have left to future agreement any matter that is essential to a complete understanding of the obligations which they propose, respectively, to assume. (*Louis Lesser Enterprises, Ltd.* v. *Roeder*, 209 Cal.App.2d 401 [25 Cal.Rptr. 917].)

The project the parties proposed to engage in consisted of buying out other persons who had property interests that must be acquired, the purchase of real property, the construction thereon of a bowling alley, restaurant and bar, which the parties would operate. Unless they accomplished these purposes there would be no joint venture, but only a plan that had failed of accomplishment. An agreement to engage in a joint venture, like any other agreement, in order to be enforceable, must define the obligations intended to be assumed with sufficient certainty to enable a court, when comparing the conduct of the parties with their agreement, to determine whether the respective obligations have been performed or breached.

As previously stated, it appears from the complaint that the parties did not understand or intend themselves to be bound by their tentative oral agreements, nor by any agreement until the matters as to which there was a meeting of the minds were evidenced by a writing duly executed. This, in itself, is a sufficient reason for affirmance of the judgment. However, in our discussion, it will be made clear that there is another reason for affirmance, namely, that the oral agreement, itself, was so vague and incomplete as to be unenforceable.

In the original complaint it was alleged that defendants

represented they could obtain "extraordinary financing" and that it was agreed that plaintiffs and defendants would share equally "the required cash investment." In the second amended complaint it was alleged that defendants agreed "to obtain the financing" and that plaintiffs and defendants would "share jointly the costs and the obligations of the enterprise." It was necessary to buy out King's undescribed interest and it was proposed to pay $25,000, if a purchase could be arranged, and it was also necessary to buy out the interest of Edmunds by payment of the amount he had invested and loaned. If those things should be accomplished, the land would be acquired and the bowling alley, the restaurant and the bar would be constructed and equipped. It was not alleged that agreement had been reached as to the amount the parties would be willing to pay King or Edmunds if they were willing to sell, or whether the bowling alley, the restaurant and the bar would be large or small, or what they would cost, or what the land would cost. The "financing" of the venture, no doubt, would have necessitated the borrowing of a large amount of money. What proportion of the total cost could be borrowed and upon what terms, and who would be obligated to repay it? And who would provide the difference between the total cost and the amount that could be borrowed from a third party? Were defendants to advance the amount as a loan, as a part of the "financing," or was the amount to be paid in by plaintiffs and defendants in equal amounts?

It appears from the complaint that plaintiffs were wanted as "operators," as well as partners, and that for their services they were to receive 10 per cent of the profits of the enterprise in addition to their ownership of 45 per cent of the stock of the corporations. It was not alleged that an agreement had been reached as to what the duties or authority of plaintiffs, or either of them, would be in the capacity of operators. It was an important feature of the project and it could well be that the parties could not agree upon the nature of the services to be rendered, or upon the time for which they would have to be rendered in order to earn as compensation an extra amount of stock. Was it for a year, or as long as the business would be operated?

The alleged oral agreement was, at most, an agreement to endeavor to agree upon these fundamental and essential features of what was hoped to be a joint venture. The letter of plaintiffs to Mr. Sandler was, at most, a proposal as the basis of an agreement to be drafted by Sandler, to be submitted for

the approval of plaintiffs and defendants. An agreement was drawn and submitted. Plaintiffs have been careful not to allege the contents of the agreement. Obviously, they were not satisfactory to defendants. No changes in the proposals were suggested and no counter proposal was made by defendants, who proceeded to ignore plaintiffs and go ahead without them. In fact, the proposed agreement may not have met with the approval of Edmunds, whose interest had to be purchased. Plaintiffs have incorporated in the complaint a letter which, although irrelevant to the issues, discloses a statement made by Firks to plaintiff Levy, that defendants, instead of by buying out Edmunds, had taken him in as a half owner of the enterprise.

No one contributed any money or property to a supposed joint venture; no one took any action whatever on behalf of a joint venture, and the respective parties acted independently of each other except in the single instance when they engaged the services of Sandler for the preparation of an agreement.

The parties left to future agreement every essential feature of the enterprise which was the subject of their negotiations, but plaintiffs failed in their efforts to reach an agreement with defendants. It would be clear to any court, upon proof of the facts alleged, that the parties did not enter into an enforceable agreement.

The first cause of action sought a declaration of rights under a supposed contract. Since there was no contract pleaded there were no rights and duties to be declared. The demurrer to the first cause of action was properly sustained.

The second and third causes of action incorporated the allegations of the first cause of action with respect to the claimed agreement, and sought damages of $500,000 against Firks and Alexander for breach of contract. The facts were alleged as a basis for an award of damages and since no enforceable contract was pleaded, the demurrer to the second and third causes of action was properly sustained.

The judgment is affirmed.

FORD, J.—I concur in the determination that the judgment should be affirmed. My reasons for that conclusion will be briefly stated.

In the second cause of action of the second amended complaint there is incorporated the following allegation of the first cause of action: ''Defendants Firks, Alexander and King and some of the other defendants proceeded with the enterprise, acquired the real property, acquired the stock of

Kingpin Lanes and ... created the entities contemplated by the joint venture and opened the enterprise for business; all, however, to the exclusion of the plaintiffs." It is further alleged in the second cause of action that by reason of the breach and repudiation of the agreement by the defendants, "plaintiffs have lost the benefits of their said bargain and agreement in the sum of $500,000.00."

In the third cause of action it is alleged that about July or August 1960,[1] the defendants breached and repudiated the agreement and that "thereafter defendants took over the enterprise to the exclusion of plaintiffs, acquired it for themselves and commenced operations." It is further alleged that thereby "plaintiffs have lost the benefit of their said agreement in the sum of $500,000.00."

An action at law will lie for the breach of a valid agreement to undertake a business association in the nature of a joint venture. (See *Braxdale* v. *Bange*, 166 Cal.App.2d 399, 402 [333 P.2d 420].) However, the second amended complaint in the present case fails to disclose wherein the plaintiffs have suffered any damages. A new enterprise was to be undertaken and its success depended upon a number of factors, including the skill of the managers of the undertaking. In such a case the proper measure of damages, in the absence of any means of determining the prospective profits of the contemplated business, is the loss sustained by the plaintiffs in preparing to carry out their part of the contract. (*Overstreet* v. *Merritt*, 186 Cal. 494, 505-506 [200 P. 11]; see *Hartley* v. *Weller*, 104 Cal.App.2d 118, 119-120 [231 P.2d 133]; *Gainer* v. *Storck*, 169 Cal.App.2d 681, 688 [338 P.2d 195].) The pleading fails to disclose any basis for the alleged damages, even though the special demurrer to the cause of action for damages contained in the original complaint had been placed on the ground that it could not be ascertained therefrom how the plaintiffs had been damaged in the sum of $500,000, and the special demurrer to the cause of action for damages in the first amended complaint had been partly based on the ground that it could not be ascertained therefrom whether the alleged damages in the sum of $500,000 were "damages which are claimed to have been proximately caused, or which, in the ordinary course of things, would be likely to result from the alleged breach of contract of the defendants."

The fact that by the first cause of action of the second

---

[1]The action was commenced by the plaintiffs on June 23, 1961.

amended complaint declaratory relief is sought does not aid the plaintiffs. Specific performance of the agreement whereunder the parties were to be personally active in the conduct of the enterprise could not be compelled. (See 81 C.J.S., Specific Performance, § 81.) Moreover, as has already been noted, the plaintiffs fail to disclose any basis upon which to predicate a claim for damages. Consequently, the reasoning of the court in *Sinclair* v. *State of California*, 194 Cal.App. 2d 397, at pages 407-408 [15 Cal.Rptr. 493], is apropos: "The plaintiffs also contend that, regardless of the merits of the controversy presented by their complaint, the general demurrer thereto should have been overruled; that it states a cause of action for declaratory relief because the facts alleged therein show the existence of an actual controversy between them and the defendants; that they are entitled to a declaration respecting this controversy whether the declaration so made is favorable or unfavorable to them, and rely upon the settled rule to this effect. (*Salsbery* v. *Ritter*, 48 Cal.2d 1, 7 [306 P.2d 897]; *Columbia Pictures Corp.* v. *De Toth*, 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747]; *Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].)

"It is equally well settled, however, that a judgment of dismissal following an order sustaining a general demurrer to a complaint seeking declaratory relief, when the controversy presented by the allegations of the complaint can be determined as a matter of law, will not be reversed where no prejudice to the right of the plaintiff has resulted from the procedural error incident to such an order and judgment. (*Haley* v. *Los Angeles County Flood Control Dist.*, 172 Cal. App.2d 285, 292-294 [342 P.2d 476]; *City & County of San Francisco* v. *Budde*, 139 Cal.App.2d 10, 12 [292 P.2d 955, 294 P.2d 503]; *Davis* v. *City of Santa Ana*, 108 Cal.App.2d 669, 684 [239 P.2d 656]; cf. *Anderson* v. *Stansbury*, 38 Cal. 2d 707, 717 [242 P.2d 305]—where the same principle was applied in sustaining a judgment of dismissal following an order granting a nonsuit; and *Lavine* v. *Jessup, supra*, 161 Cal.App.2d 59, 69 [326 P.2d 238]—where a similar conclusion was based on different reasons.)"

Files, J., concurred.

A petition for a rehearing was denied December 5, 1963, and appellants' petition for a hearing by the Supreme Court was denied January 7, 1964. Peters, J., was of the opinion that the petition should be granted.