Mr. Justice Hall
delivered the opinion of the Court.
This case started as an action by The A. B. Hirschfeld Press, Inc., against the individual parties hereto, the National Dairy Merchandising Council and Maximilian Kerr Advertising, Inc., a corporation. Hirschfeld had judgment against the defendants. Thereupon the partners stipulated and agreed that the court should adjudicate the rights and duties of the four individuals and wind up the affairs of the partnership, dissolve the same, have an accounting between the partners, and enter a proper judgment fixing the liabilities of the partners among themselves. In addition, the parties further stipulated:
* * *
b. That the partnership was dissolved by the will of one of the partners and abandoned by all, except for winding up, at or near November 21, 1957.
c. That Robert L. Riedel was authorized to ‘wind up’ the partnership affairs; that he did complete the same near the last of April, 1958, by the sale of mose [sic] of the partnership assets.
d. That the total proceeds approximated $30,000.00 on sale of inventory ■ — ■ $10,000 before dissolution and $20,000 afterward — all figures approximate.
* * =!:
“4. That main contention is whether or not the Riedels contributed $60,000 to capital as agreed upon, or whether or not they had to, under the circumstances. It is agreed that the partnership agreement calls for that amount.” (Emphasis supplied.)
From the record it appears that in September of *196 1957, the four individual parties had agreed to form a partnership and had then started operating the business known as the National Dairy Merchandising Council.
On October 18, 1957, Articles of Co-Partnership were drawn and executed and all of the parties agreed that this agreement correctly states the rights and duties of the partners.
Pertinent provisions of this agreement are as follows:
“V. It is contemplated that each partner shall own an equal interest in and to the partnership; however, until the cumulative net profits aggregate a total of three hundred thousand dollars ($300,000.00) the interests of each in said partnership shall be as follows:
Robert L. Riedel 30%
Wesley A. Riedel 30%
Raymond D. Brent 20%
Maximilian Kerr 20%
and division of net profits and losses shall be in such proportions; * * * .
“(A) It is understood and agreed that before withdrawal shall be made by either Brent or Kerr, there shall be paid to the Riedels the sum of sixty thousand dollars ($60,000.00) from the net profits to be paid without jeopardy to the business; except that withdrawals shall be permitted for the payment of income taxes attributable to this business.
“(B) If the initial sixty thousand dollars ($60,000.00) contributed by the Riedels is not repaid in full prior to October 1, 1958, the partnership shall be obligated to repay the same together with interest from and after that date at the rate of two percent per month on unpaid balances until fully paid.
“(C) The Riedels agree that for the first year’s operation they shall be responsible for the first ten thousand dollars ($10,000.00) of net losses; provided, however, that if a net profit in excess of ten thousand dollars ($10,000.00) shall be made at any time during said year, this guaranty and responsibility ceases.”
*197 Thus it clearly appears, though not expressly stated, and the parties agree that the Riedels should supply all of the original capital, $60,000.00, to get the business started.
During the short period of time that the partnership functioned, about six weeks, a dreamed of $110,000.00 net profit turned out to be an actual $65,740.89 operating loss.
The trial judge found that the plaintiffs in error — the Riedels — had failed to comply with their agreement to advance $60,000.00 as capital in that they had put up only about $48,000.00, and had breached their agreement in failing to advance the remaining $12,000.00, and as a consequence thereof Brent and Kerr had been damaged to the full extent of any amounts that might be their contribution to make up losses sustained, and that they were in no manner further obligated to the Riedels or the partnership.
On the trial all of the partners except Kerr testified. From their testimony one does not get a very clear picture of any of the matters presented to the trial court for solution.
In addition to the partners, one Cook, an accountant, was called by Brent and Kerr — he testified that he had made an inspection of the company’s books as of about May, 1958, and the books at that time reflected contributions by the Riedels to capital of only about $6000.00. He did not consider as capital anything except cash.
Riedels called as a witness in their behalf one Arnold, an accountant who had set up the partnership books and supervised the keeping of the same from the beginning until after the partnership had ceased to do any business other than by way of dissolution. He made an audit of the books as of December 31, 1958, from which it appears that Riedels had, during 1957, contributed capital by way of cash, letters of credit, services rendered by Frey-Riedel Lithographing Company and per *198 sonal assumption of partnership obligations totalling some $67,000.00. In addition his report showed that the Riedels had loaned to the partnership $5000.00. By the same bookkeeping methods Arnold had credited Kerr with capital investment in the amount of $11,029.14 by reason of services of the Kerr Advertising Agency of that value furnished to the partnership, and for which obligation Kerr assumed personal responsibility.
By the same method Arnold had credited Brent with capital investment in the amount of $5556.12 by reason of payment of certain partnership liabilities, assumption of others, and transfer of notes between partners.
The correctness of this audit is not in question; it was admitted in evidence without objection and furnishes the only understandable explanation of the affairs of the partnership.
The record shows that Riedels did, through cash advanced, procurement of letters of credit for which they alone were answerable, and production of material and services by Frey-Riedel Lithographing Company, supply more than the $60,000.00 of capital called for, and the court’s finding to the contrary is not supported by any evidence and the finding of the trial court on this “main contention” must be reversed.
Even though Riedels had failed to supply the stipulated amount of capital, that would not be reason to relieve Brent and Kerr of all obligations without proof of the amount of damages suffered by them by reason of Riedels’ failure. There is no proof that Kerr or Brent suffered any damages because of Riedels’ alleged failure to supply the total capital of $60,000.00. There is no evidence whatsoever to indicate that the partnership at any time lacked capital to carry out its purposes.
The fact that the partnership lost over $65,000.00 in less than two months’ operations cannot lead one to believe that if more capital had been available, profits would have followed. There is nothing in the record *199 before us to even remotely suggest that had Riedels put up $12,000.00 additional capital, the partnership would have made a profit. Two months’ experience indicated no hope of a profit and the partners agreed to terminate the business, not because of lack of capital, but because of lack of profit and mounting losses.
The measure of damages in such a situation is set forth in 25 C.J.S. 583, Damages, § 79 c:
“The measure of damages for breach of an agreement under which the parties are to share profits is ordinarily the amount of profits which plaintiff would have received under the contract if it had been carried out. So, upon, breach of an agreement to share the proceeds of an adventure, plaintiff’s damages are measured by the value of that which would have been his share * * * .” Under the partnership agreement, Brent and Kerr had the right to share in profits and the duty to contribute to make up losses.
At the time of the trial certain assets of the partnership had not been converted into cash, some judgments obtained against all of the partners and some claims then in dispute remained unsatisfied.
The judgment is reversed and the cause remanded for such further proceedings as may be necessary to convert all of the assets of the partnership into cash; a complete accounting between the parties, and distribution of assets and losses among the partners as provided in the partnership agreement.