**Lillian Conley, Plaintiff-Appellee, v. Dorothy Echoles, Defendant-Appellant.**

**Gen. No. 53,612.**

First District, First Division.

February 2, 1970.

Eugene W. Wood, Haft, Shapiro & Haft, of Chicago (Morris A. Haft, of counsel), for appellant.

Simon & Ingram, of Chicago (Robert B. Simon and John D. Ingram, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff and defendant, desirous of engaging in a combination liquor and grocery store business venture on a partnership basis, executed two written agreements: (1) a preliminary agreement which stated that the plaintiff would pay the sum of $2,500 to the defendant for the privilege of becoming a partner of the defendant; and (2) articles of partnership. The instant action sought a partnership dissolution and "other and further relief." After a nonjury trial the court found that the partnership never materialized and there had been a failure of consideration and entered judgment in favor of plaintiff for $2,500, plus costs, from which defendant appeals.

On appeal defendant contends that (1) the trial court erred in basing its judgment on rescission when such wasn't pleaded or proved; (2) certain pronouncements of the court precluded her from offering further proof on an issue; (3) plaintiff was entitled only to an accounting; (4) plaintiff was bound by testimony of defendant called by plaintiff as an adverse witness; and (5) the court erred in striking plaintiff's counterclaim.

Defendant operated a cocktail lounge at 1715 East 71st Street in Chicago and in 1965 was desirous of going into

the business of operating a combination grocery and package liquor enterprise. She rented a store at 1729 East 71st Street in Chicago for a term of five years, commencing September 1, 1965, "for the display of groceries, meats, and package liquors," at a rental of $150 per month. On September 28, 1965, plaintiff and defendant entered into a "Preliminary Agreement to the Execution of General Articles of Partnership," the provisions of which included:

"2. Lillian Conley acknowledges that prior hereto Dorothy Echoles expended time and money of the value of $2,500.00 in preparing the premises, to the date hereof, to be used in the proposed partnership business, and agrees to pay to Dorothy Echoles the sum of $2,500.00 for the privilege of becoming her partner and as reimbursement in full for expenditures of time and money made to the date hereof.

"3. It is further understood and agreed by and between the parties hereto that the $2,500.00 being paid by Lillian Conley to Dorothy Echoles as aforesaid, is not a contribution to the capital of the partnership to be formed, is not refundable under any circumstances, and is not a credit on any future partnership assets, except insofar as the leasehold improvements now existing and now in place in the premises have value, which value shall be shared equally upon formation of the partnership."

On the same date the parties signed "General Articles of Partnership" to establish the partnership.

Defendant, called under section 60 of the Civil Practice Act, testified that she spent $300 as rental security, $1,000 for remodeling the store front, $225.75 for floor tiling, $40 for welding work, upwards of $500 to have the store front extended, $100 for electrical work and $700 to $800 for other items. All of these payments were made prior to September 28, 1965, the date of the

12

agreement preliminary to the partnership agreement, but plaintiff had paid $2,500 on that date for the privilege of becoming a partner. Also, subsequent to execution of the "General Articles of Partnership," fixtures and items of equipment were purchased and rent and other expenses were incurred, all of which were paid for by plaintiff and defendant.

Defendant further testified that the store did not open for business because plaintiff "just walked away and the store remained unoccupied for a whole year and all the improvements, including the check-out counter and the shelves, were in there for a whole year." Defendant also paid the rent for the entire year, during which time she did not get any money from plaintiff. In September or October of 1966 defendant began using the store for her own business, and has continued to pay rentals due during the term of the lease.

Plaintiff testified that she spent money from her own funds over and above the $2,500 and kept a record of these expenditures. She eventually received the key to the store in November of 1965. She terminated the partnership for the reason that "Mrs. Echoles didn't appear to be trying to open up a business; I didn't wish to turn in any more money on a business when I didn't know where my money was going to; I was never able to have a business conversation with her; I couldn't get her to show me anything concerning the bills that she was keeping."

At the close of the testimony and proofs, and after an extended discussion with counsel, the court found in favor of plaintiff and entered a decree for $2,500, plus costs.

The complaint, in substance, alleged that (1) on September 28, 1965, Articles of Partnership were executed; (2) the partners agreed to full disclosure and for consultation with each other; (3) defendant took exclusive possession of the books and assets of the partnership and

■

refused to have books of account prepared and to keep them for inspection, nor was a general account of the affairs of the partnership prepared as of January 1, 1966; (4) that plaintiff invested a sum in excess of $5,000 in the partnership, which included an initial sum of $2,500 paid to the defendant on account of representations made by such defendant that she arranged for a lease and had made expensive leasehold improvements; (5) that the defendant was guilty of inequitable and unconscionable conduct toward the plaintiff; (6) that the partnership was heavily in debt and on account thereof the plaintiff is personally obligated on certain partnership obligations and that no equitable division of assets and goodwill of the partnership could be made without prejudice to the plaintiff's interest; and (7) that defendant conducted herself so as to make it appear that she desired to become the sole owner of the enterprise.

The complaint prayed for the following relief: (1) that the partnership be dissolved by decree of court; (2) that a receiver be appointed to dispose of the partnership property to pay the debts, costs, and expenses; (3) that the surplus proceeds of the sale to be paid to plaintiffs; (4) that judgment be entered against the defendant for an amount constituting the difference between plaintiff's investment and an amount to be received by her resulting from the sale of the partnership assets by the receiver; and (5) "for such other and further relief in the premises as the Court may deem equitable and proper."

Defendant's first contention is that the trial court erred in basing its judgment on contract rescission when such wasn't pleaded or proved and that "the complaint contained no allegation which if proven would require payment to the plaintiff by the defendant of such sum of $2,500.00."

Defendant argues that under the preliminary agreement the $2,500 was payment for the privilege of plain-

14

tiff becoming defendant's partner through the purchase of one-half of whatever defendant had, and was not refundable under any circumstances. She notes that the only possible mode of recovery would be a complaint for rescission, and since there was no pleading of this nature filed by plaintiff, the court was incorrect in awarding the $2,500 to her, absent an amendment of her complaint. Among the authorities cited are Broberg v. Mann, 66 Ill App2d 134, 213 NE2d 89 (1965) ; Leffers v. Hayes, 327 Ill App 440, 64 NE2d 768 (1945) ; and Field v. Field, 319 Ill 268, 149 NE 757 (1925). In Field v. Field, it is stated (p 270) :

> "Before a party is entitled to a decree his allegations and proof must agree. If the allegations in a bill are not established by the proof, or if the proof establishes a state of facts not alleged in the bill, and no amendment of the bill to correspond with the proof is made, the bill must be dismissed. . . . The decree cannot give relief which facts disclosed by the evidence would warrant, where there are no averments in the bill to which the evidence can apply."

Defendant further argues that there was a total absence of evidence which would tend to support a claim for rescission. That the court based its judgment on rescission is apparent from the following colloquy:

> Mr. Haft: "You know, Your Honor, based on the statements that Your Honor made for the record, I didn't put in more than I could have put in, but I have to take Your Honor's word for what happened."

> The Court: "That's your privilege, to put on your case."

> Mr. Haft: "I know it's my privilege, but Your Honor made statements and you said that $2,500.00

15

she paid for the key, period, and I am not going to consider it."

The Court: "Of course that's what she paid for."

Mr. Haft: "Yes."

The Court: "Why certainly."

Mr. Haft: "Then why are you giving it back?"

The Court: "Because she never got anything for the $2,500.00. She didn't get the key. She didn't get a business. Even if there was a mutual rescission, she would be entitled to that money. Under any principle of law that you can mention, she's entitled to that $2,500.00 back again. It didn't materialize. Wouldn't even make any difference as to whether the rescission was by your client or by the other. It's a rescission. No business, nothing between them."

. . . . . .

The Court: "I will say this to you: I am very liberal in my interpretation as being a rescission and only allowing the repayment of the $2,500.00. I could have found that the fault of not going ahead with the partnership was the defendant's fault and I could have imposed $1,981.00 additional obligations on her, but I am not doing it."

Defendant asserts that the preliminary agreement was fairly entered into for an adequate consideration and cannot be avoided or disregarded by the plaintiff. (Albers v. Continental Illinois Bank & Trust Co., 296 Ill App 592, 17 NE2d 66 (1938).) Also, where a contract is unequivocal in its terms it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imputed. National

Acceptance Co. v. Exchange Nat. Bank, 101 Ill App2d 396, 243 NE2d 264 (1968).

Defendant finally notes that the preliminary agreement clearly stated the intention of the parties and that absent an ambiguity, this intention could be only determined from the language of the agreement itself and not from extrinsic circumstances. The authorities cited included Herlihy Mid-Continent Co. v. Sanitary Dist. of Chicago, 390 Ill 160, 60 NE2d 882 (1945), and Patent Scaffolding Co. v. Standard Oil Co. of Indiana, 68 Ill App 2d 29, 215 NE2d 1 (1966). In Herlihy Mid-Continent, the court stated (p 166):

> "In construing a contract, the primary object is to ascertain the intention of the parties. . . . That intention must be determined from the language in the contract. If the intention may be ascertained from the wording of the contract, rules of construction have no application. . . . No words can be added to or taken from a contract and thereby change the plain meaning of the parties as expressed herein."

In Patent Scaffolding Co., the court stated (p 37):

> "Courts are not authorized to make contracts for the parties but must construe them as written. A contract must be given a fair and reasonable interpretation, and from the entire language used and considered in the light of the circumstances under which it was made, the court must ascertain the intent of the parties."

Plaintiff argues that the complaint reasonably informed defendant of the nature of the claim she was called upon to meet. She notes that "the complaint and the proof upon trial were directed to the effort of the plaintiff to recover the money which she had invested

with the defendant—money which had been wasted when the defendant embarked upon a course of conduct independent and exclusive of the relationship which the parties had contemplated." She points out that paragraph 7 of the complaint alleged that defendant abandoned the relationship and that paragraph "D" sought the return of plaintiff's money. On the basis of this she contends the court was thus justified, after hearing the evidence, in awarding the return of plaintiff's $2,500. The authorities cited include Pope v. Speiser, 7 Ill2d 231, 130 NE2d 507 (1955), and Annerino v. Dell Pub. Co., 17 Ill App2d 205, 149 NE2d 761 (1958). In Pope v. Speiser, the court said (p 243):

> "It is well established under the former general equity practice that the fact that the complaint may not have contained a specific prayer for establishment of an equitable lien does not deprive the court of equity of the right to enter a decree of such character under a prayer for general relief."

In Annerino v. Dell Pub. Co., the court said (p 210):

> "In deciding whether plaintiff has stated facts sufficient to allege a cause of action, the court must look to the plain and fair intendment of the language used by plaintiff and the facts which may be reasonably implied from such language. 'No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet.'"

In the instant case the complaint, in paragraph 4, alleged:

> "That the Plaintiff invested a very large sum of money in the partnership venture, to-wit: an amount in excess of $5,000.00; that an initial sum of $2,500.-

18

00 was so invested predicated upon Defendant's representation that she had through her sole funds and time arranged for a lease and made expensive leasehold improvements of a value of $2,500.00, which representation Plaintiff alleges to be contrary to the facts and that the balance of said investment, in the approximate additional amount of $2,500.00 has been put into said business by Plaintiff without the benefit of an accounting."

■ ■ From the foregoing, and from plaintiff's prayer for relief which sought "such other and further relief in the premises as the Court may deem equitable and proper," we think it was clear that plaintiff was seeking, among other things, the return of her $2,500, based on defendant's failure to open up the business.

Defendant next contends that "when the trial judge changed his mind as to the allowance of $2,500.00 to the plaintiff, fairness required that he so inform the defendant to afford her an opportunity to offer proof." Defendant asserts that the defendant was taken by surprise when the court found in favor of plaintiff in the sum of $2,500 on the basis that there had been a failure of consideration and a rescission by virtue of the fact that the partnership never materialized and hence the plaintiff was entitled to the return of the $2,500. She asserts that throughout the trial the court took the position that the $2,500 was in accord with the preliminary agreement between the parties and was not a reimbursement for expenditures made, nor was it refundable. Defendant argues that "fairness required the Court to advise the defendant that it had changed its mind and thinking as it related to the $2,500.00 paid by the plaintiff to the defendant under the terms of the preliminary agreement; the Court's abrupt finding against the defendant without notice of its change of attitude, deliberately cut off the defendant's right to offer further or other proof. An

action of the very like kind was frowned upon in People v. Riebe, [40 Ill2d 565] 241 NE2d 313, 314, and in the Broberg v. Mann case, 213 NE2d 89, at page 91."

■ We have examined the record and find that there was no prejudicial surprise involved here. Defendant was apprised of plaintiff's claim, and if the court may have seemed to favor defendant's side at first, defendant should be ready for any change in the court's attitude as the trial proceeded.

Next considered is defendant's contention that on the dissolution of the partnership, the plaintiff was entitled to an accounting only. Defendant asserts that plaintiff could not maintain an action at law upon a demand growing out of the partnership until partnership accounts had been settled and a balance struck. Defendant notes that an accounting and settlement between copartners is required as a condition precedent to an action at law by one partner against a copartner for the reason that such dispute ordinarily involves the taking of an account to determine whether the plaintiff would be entitled to a refund in a partnership transaction. Authorities on this point include Olson v. Olson, 66 Ill App2d 227, 213 NE2d 95 (1965), where the court stated (p 234):

> "Even if the parties were partners, the plaintiff could not maintain an action at law against the defendant upon a demand growing out of the partnership, until the partnership accounts had been settled and a balance struck. . . . Such procedure had not been attempted herein."

■ We find no merit to this contention. Here the court took the position that the partnership never materialized and, therefore, it was unnecessary to dissolve it. The court found that plaintiff was entitled to the return of her preliminary agreement payment because of a failure of consideration. The $2,500 was not "a contribu-

20

tion to the capital of the partnership," and plaintiff did not get what was promised to her by defendant. She was, therefore, entitled to the return of what she had paid under that agreement.

■ Defendant next contends that plaintiff was bound by the testimony of defendant, called by plaintiff as an adverse witness. Defendant notes that her own testimony, which was "believable and the truth of which was not improbable," stood unimpeached and uncontradicted. Authorities include Coss v. Magdziasz, 65 Ill App 2d 40, 212 NE2d 717 (1965), where it is said (p 43):

"Section 60, supra, itself provides:

" 'The party calling for the examination is not concluded [by the adverse party's testimony] but may rebut the testimony thus given by countertestimony and may impeach the witness by proof of prior inconsistent statements.' "

■ As argued by plaintiff, defendant's testimony was contradicted by plaintiff on material elements of the case, and plaintiff's evidence supported the trial court's finding. We conclude that the credibility of the witnesses was a matter for the trial judge who observed the witnesses, listened to their testimony and chose to believe plaintiff.

Defendant's final contention is that the trial judge erred in striking defendant's counterclaim that asked for "any monies found to be due to the defendant from the plaintiff; And for such other and further relief in the premises as this Court may deem fit to grant." The record shows that defendant sought to file an amended counterclaim during the trial of the case, and in denying defendant's motion the court remarked: "Besides you don't have a counterclaim for rent. Have no counterclaim, no setup of a counterclaim of any kind. You came in and offered to file a counterclaim after the testimony

21

had been taken, in the middle of the trial of the case. Under what theory can you file a counterclaim under those circumstances?," and counsel for defendant replied: "Oh, it's a matter of discretion with the Court. Everybody knew about everything in this case."

We agree that it was a matter for the discretion of the trial judge, and we find no abuse of that discretion in striking defendant's counterclaim or in rejecting defendant's amended counterclaim. Simmons v. Columbus Venetian Stevens Buildings, Inc., 20 Ill App2d 1, 9, 155 NE2d 372 (1959).

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.