ROBERT S. RANKIN, Plaintiff-Appellee, *v.* WALTER HOJKA, Defendant-Appellant.

First District (5th Division)    No. 62860

Opinion filed September 24, 1976.

Curtis H. Appel, of Anthony Scariano & Associates, P. C., of Chicago Heights, for appellant.

Collins & Amos, of Chicago (Alan O. Amos, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This appeal is from a judgment in the amount of $35,705.68 in favor of plaintiff, Robert S. Rankin, on a complaint for the breach of an oral agreement to form a joint venture to develop a parcel of real estate. The breach was occasioned by defendant's failure to convey the property into a land trust in which plaintiff would own one-half the beneficial interest.

The defendant presents two issues for our determination, contending

that the verdict was against the manifest weight of the evidence and that the damages were calculated incorrectly.

The testimony at trial discloses that plaintiff and defendant first met in the summer of 1968 when plaintiff and his father were looking for vacant land where the family-owned business, Harco Steel Erectors, could park its equipment. After several discussions, defendant agreed to allow Harco to park the equipment on his land located adjacent to the Cal-Sag Road in Crestwood, Illinois. Although the question of rent was discussed, the amount was left open at that time.

Later in 1968 Rankin and Hojka began to discuss the possibilities for the joint development of a portion of defendant's vacant property. Plaintiff indicated that an acquaintance, Joseph Eschbach, for whom plaintiff had once done work, was seeking a building suitable for use in the steel fabrication business. Eschbach was brought into the negotiations, and after four to six meetings, the three men reached an oral agreement to form Northern Industrial Steel Corporation in December of 1968, with Eschbach owning 51 percent of the stock, and plaintiff and defendant each owning 24½ percent of the stock. At the same time plaintiff and defendant agreed to form a joint venture to construct a steel fabrication building on defendant's land and rent it to Northern Industrial Steel Corporation.

Defendant agreed to cause land valued at $30,000 to be conveyed into a land trust in which plaintiff would own one-half the beneficial interest. Plaintiff agreed to supervise the construction of the building and obtain a tenant. The monetary consideration to be tendered by plaintiff as his share of the venture is disputed. Defendant contends that plaintiff agreed to contribute $30,000 in cash, an amount equal to the agreed upon value of the land. The cash was to be the basis for obtaining a construction loan and would be applied to the construction of the building. Plaintiff contends that he agreed to pay defendant an amount equal to one-half the value of the land. In support of this contention plaintiff and Eschbach both testified that defendant had originally proposed that defendant, plaintiff and Eschbach each take a one-third interest in both the building and the steel business. Each partner would have contributed $10,000 to the building venture. However, Eschbach indicated that he wanted a 51 percent interest in the business itself, and that he would have insufficient remaining funds to invest in the building. Accordingly, at the December 1968 meeting plaintiff and defendant decided to form the steel fabrication building venture without Eschbach.

Plaintiff testified that defendant pressed him as to how he would obtain the $15,000 for his share of the venture, and that he had replied that he would influence his father to have Harco Steel give defendant a check for $15,000, and that defendant could "count it as rent or anything."

Defendant's son testified that his father had originally proposed that an acre of land valued at $40,000 be used in the venture, but that plaintiff had indicated that he had been thinking more in the area of a $30,000 contribution. Defendant had then suggested that they cut the size of the property to be included in the venture down to three-quarters of an acre. Defendant's son also testified to a conversation in 1969 where plaintiff had allegedly told defendant that he was having difficulty in obtaining the $30,000, and proposed an alteration in the agreement whereby plaintiff would pay $15,000 in return for half the land. Defendant agreed to consider this proposal but never accepted it.

Pursuant to the agreement, the parties went to the First National Bank of Blue Island to arrange financing for the construction of the building. Defendant stated that when he and plaintiff had gone to discuss the construction loan, he had told the loan officer that plaintiff would be putting up $30,000 in cash, and that plaintiff had not contradicted this statement. The construction loan was obtained in March 1969, and plaintiff and defendant both signed the note.

Approximately one month after the loan was opened, a land trust was established at the First National Bank of Blue Island. The trust agreement recited that the bank was about to take title to certain described real estate,[1] and that Josephine Hojka (defendant's wife) and plaintiff were the beneficiaries of the trust. Plaintiff, defendant and Mrs. Hojka later executed a security assignment of the beneficial interest in the trust to secure a second construction loan obtained in June 1969. However, the land in question was never conveyed into the trust.[2]

Defendant claimed that while he was in Florida, plaintiff had started construction of the building without putting up the $30,000, but that plaintiff had assured him then, and on numerous subsequent occasions, that he would pay him the money. Defendant also claimed that plaintiff had at one point offered to pay most of the $30,000 by charging the purchase price of some warehouse cranes to Harco Steel, but that this proposal had fallen through.

The building was completed in May 1969, and the tenant took possession. On July 29, 1969, plaintiff delivered a $15,000 check to defendant from Harco Steel Erectors. The check had the words, "For Rent Due to July 1969" typed upon it and the words, "Rent for 3 Year [*sic*] From 68/70" printed in ink in the margin by defendant. Plaintiff contends that this check was the consideration for defendant's agreement to convey

---

[1] The legal description of the land set forth in the trust agreement comprised the area referred to as Parcel Four (see discussion in Part II below) and contained property with frontage on the Cal-Sag Road.

[2] When the trust officer was questioned at trial about this security assignment, he conceded that it was highly unusual to accept a no-asset trust as security but stated that defendant was "a very good customer."

the land into the trust. On cross-examination plaintiff admitted that he had stated in his deposition that the $15,000 check he had given to Hojka on July 29, 1969, was rent for the land Harco Steel had used to park its equipment, and that it was not for any other purpose. He stated that defendant had written the words in the margin outside of his presence. However, he maintained that the payment was "paid for rent under the deal for me to conclude my agreement with Mr. Hojka that I was to get Harco to produce $15,000, and I did it."

Defendant's version of the $15,000 rent check transaction was sharply at variance with plaintiff's testimony. Defendant testified that plaintiff had again told him that he did not have the $30,000, and that defendant had asked him if he would at least pay the rent due on the land used for parking Harco Steel's equipment. When plaintiff handed him the check, he told defendant to "mark the thing rent," and that he marked it in plaintiff's presence. Defendant also claimed that he had reported the $15,000 as rental income on his tax return for 1969.

Plaintiff attempted to show that defendant had not reported this $15,000 as rental income, and that he never considered it to be rent. The evidence disclosed that defendant reported $24,500 in rental income for 1969. Defendant claimed that $14,000 of the $15,000 received from Harco Steel was included in that figure, and that the balance, or $10,500, was received as rent for the building. Plaintiff introduced cancelled rent checks from Northern Industrial Steel Corporation which totalled $25,500 for 1969. Defendant subsequently introduced two bank ledgers into evidence which listed loan payments of $25,500 for 1969. Plaintiff argues that this figure corresponds exactly with the amount of rent received by defendant from the building and pointed out that defendant's figure of $10,500 was arrived at by using the entries in the second ledger only, reflecting payments for November and December 1969.[3]

Northern Industrial Steel continued to pay rent until September 1971 when it vacated the building. The rental payments were credited to the construction loan and the balance used to pay taxes and insurance. After Northern left the building, plaintiff met with defendant and offered to pay half of the loan installments. Defendant replied that he considered plaintiff to have no interest in the building or the trust. Plaintiff then instituted these proceedings.

This action was originally brought to declare a trust over the subject property. The court dismissed that complaint, holding that plaintiff had an adequate remedy at law for money damages. An amended complaint at law was then filed. Defendant filed a counterclaim alleging that the

[3] Defendant offered no explanation of why the $1,000 of rental income was not reported, and the discrepancy is not accounted for by either party's interpretation of the rental income figures.

land in question was to be valued at $60,000, and that plaintiff was to contribute the sum of $30,000 for a half interest in the venture. At trial the court treated this pleading as a judicial admission and observed that it contained facts directly contrary to both plaintiff's and defendant's testimony. Defendant and his attorney both admitted that the allegation that the land was valued by the parties at $60,000, as well as other allegations in the counterclaim, was incorrect. Plaintiff amended his complaint at trial to correct the legal description of the property to conform to that set out in the trust agreement.[4]

At trial the testimony and exhibits set forth above were received, and the court found that plaintiff and defendant had entered into a valid oral agreement to develop the real estate, and that plaintiff's contractual obligations were to invest $15,000 in cash, supervise construction of the building and obtain a tenant for the premises. Defendant's obligation was to convey the property in question into a land trust in which plaintiff would be a 50 percent beneficiary.

The court further found that the $15,000 check from Harco Steel to defendant was intended by the parties to be plaintiff's contribution to the joint venture and was not considered to be rent. The court therefore held that the plaintiff had substantially performed his part of the agreement, and that defendant breached the agreement in November 1971 when he informed plaintiff that he had no interest in the property.

After valuing the property at $225,275 as of November 1, 1971, and deducting numerous expenses and the balance on the mortgage, the court awarded damages to plaintiff in the amount of $35,705.68 plus costs. The court also found against the defendant on his counterclaim. Defendant then brought this appeal.

OPINION

I

Defendant's first contention is that the finding by the trial court that Rankin was to pay $15,000 to defendant under the agreement to form the joint venture was against the manifest weight of the evidence, and that the manifest weight of the evidence could only support the defendant's position that plaintiff was required to contribute $30,000 in cash to be employed as working capital in the joint venture and as a necessary condition to its formation.

The determination of the credibility of the witnesses and of the weight to be accorded to the evidence is committed to the trier of the facts (*Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42) who has the opportunity to see and hear the testimony and resolve the conflicts arising

---

[4] The original complaint set forth a legal description that did not have frontage on the Cal-Sag Road and which comprised the area referred to as Parcel Two. (See Part II below.)

from it (*McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, 235 N.E.2d 824), and his findings will not be disturbed unless manifestly against the weight of the evidence. (*M.E. Stein & Co., Inc. v. Jones* (1973), 13 Ill. App. 3d 184, 300 N.E.2d 553.) For a verdict to be against the manifest weight of the evidence, it must be clearly and palpably against the weight of the evidence (*Union Drainage District v. Special Drainage District* (1973), 10 Ill. App. 3d 829, 835, 295 N.E.2d 91) or an opposite conclusion must be clearly apparent. (*Karris v. Woodstock, Inc.* (1974), 19 Ill. App. 3d 1, 11-12, 312 N.E.2d 426.) Where several reasonable inferences are possible, those conclusions drawn by the trial court must prevail. (*City of Chicago v. Commonwealth Edison Co.* (1974), 24 Ill. App. 3d 624, 321 N.E.2d 412.) *Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 323 N.E.2d 418, cited by defendant, contains some particularly appropriate language. The court there stated:

> "In the present case there is a substantial quantity of conflicting testimony and contradictory evidence. Although the defendant's position finds substantial support in the record, we are unable to conclude that a verdict in its favor is clearly evident. Moreover, we cannot say that the plaintiff's testimony and the evidence presented on his behalf lacks a factual basis." *Cannell*, at 913.

In the instant case the facts in dispute are the result of an obvious conflict in the testimony of the parties to the agreement. Although defendant urges that the apparent contradictions between plaintiff's discovery deposition and his subsequent statements at trial render his version of events unworthy of belief, we note that his testimony was corroborated by the testimony of Joseph Eschbach, by subsequent conduct of the parties in the financing and construction of the building, and from fair inferences to be drawn from the exhibits admitted into evidence. Moreover, the judicial admission of defendant in his counterclaim that the agreement contemplated the contribution by plaintiff of an amount equal to only one-half the value of the land is also strongly supportive of the trial court's findings. The bank ledgers, cancelled rent checks received from the building tenant and defendant's declarations of rental income on his tax return all give support to plaintiff's contention that defendant never considered the $15,000 check to be rent.

■■ Our review of the testimony and the evidence leads us to conclude that the findings of the trial court that plaintiff was required to pay $15,000 to defendant as his share of the joint venture, and that the check from Harco Steel to defendant constituted such payment were not against the manifest weight of the evidence, and those findings are therefore affirmed.

## II

Defendant's second contention is that the damage award was calculated incorrectly. Two distinct issues are presented: the first concerns the proper measure of damages, and the second relates to the trial court's valuation of the property.

The trial court awarded damages to plaintiff in an amount equal to one-half the value of the building and land as of November 1971, plus one-half the total income of the building as of that date, minus one-half the total expenses and liabilities attributed to the operation and construction of the building up to the time defendant informed plaintiff that the land had never been conveyed into the trust. Defendant argues that this method of calculating damages was improper in view of the trial court's finding that the action "involves a breach of contract and does not involve any partnership situation."

■■ The proper measure of damages for the breach of a contract is that amount which will compensate the injured party for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed. (*Claeson v. Hennessey* (1959), 20 Ill. App. 2d 437, 156 N.E.2d 234.) The person injured is to be placed in as good a position as he would have been had the contract been performed and is entitled to whatever net gain he would have made under the contract. (Corbin, Contracts §992 (1964).) Where a party to a contract repudiates it, the other is entitled to recover the value of the contract to him at the time of its breach. (*Ducasse v. American Yellow Taxi Operators, Inc.* (1928), 231 N.Y.S. 51, 224 App. Div. 516.) On the breach of an agreement to share the proceeds of a joint venture, plaintiff's damages are to be measured by the value of that which would have been his share. *Riedel v. Brent* (1962) 149 Col. 194, 368 P.2d 771.

■■ Defendant cites to us the well-known rule that one partner may not sue the other in an action at law until there has been a settlement of the partnership affairs and a balance struck. (*Milligan v. Mackinlay* (1904), 209 Ill. 358, 70 N.E. 685; *Mayhew v. Craig* (1929), 253 Ill. App. 238.) However, this rule is factually inapplicable to the instant case. The trial judge specifically found that no joint venture or partnership had been formed, and that the breach was of the executory agreement only. Defendant has not hitherto challenged that finding and can hardly do so for the first time on this appeal.

■■ An agreement to form a partnership does not of itself create a partnership (*Lundquist v. Iverson* (1929), 333 Ill. 523, 165 N.E.135), and where one party refuses to carry the executory agreement into effect, an action at law will lie for the breach. *Wilson v. Campbell* (1848), 10 Ill. 383.

Defendant's reliance on *Mayhew v. Craig* (1929), 253 Ill. App. 238, is

misplaced. That case not only reaffirms the proposition that an action at law will lie for the breach of an agreement to enter into a partnership, "or to do some act antecedent to the formation of the partnership" (*Mayhew*, at 240), but also points out that there is an obvious distinction between a partnership already entered into between two parties and an agreement to form a partnership. (See also *Doyle v. Bailey* (1874), 75 Ill. 418; *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512.) The court in *Mayhew* refers repeatedly to the fact that in the case before it, which involved defendant's failure to furnish his share of the partnership capital, none of the partnership affairs was included and that plaintiff thus met the test allowing an action between partners when "the damages resulting from a breach of a partnership agreement by one partner belong exclusively to the other partner, and not to the firm, * * *." (*Mayhew*, at 241.) The court's repeated references to *"partnership* accounts" and "expenses of the *firm"* make clear the conclusion to be drawn from such language: the court is carving out an exception to the general rule precluding actions at law by copartners. (See *Marcus.*) In the instant case there are no partnership accounts or expenses of the firm for the simple reason that no partnership or firm was ever formed. Although plaintiff contributed his $15,000, defendant never did the one act necessary to complete the formation of the joint venture and carry the executory agreement into effect, that is, to have conveyed the property into the land trust. Instead, defendant collected the rent, paid the loan installments and the expenses of the building, declared the entire sum received as rent for the building on his own income tax return and failed to give plaintiff the beneficial interest in the land trust which the plaintiff expected as a result of the agreement. Thus the present action "relates exclusively to the property which should make up the capital of the partnership when formed" and is "based wholly upon the preliminary contract." (*Mayhew*, at 240.) Moreover, it seems clear that the damages accrued to plaintiff individually and not the proposed venture; defendant's breach did not affect the business itself but only plaintiff's interest therein.

An argument similar to defendant's contention was rejected in *Conley v. Echoles* (1970), 121 Ill. App. 2d 9, 257 N.E.2d 206, where the trial court, in an action for the dissolution of a partnership, took the position that the partnership never materialized and, therefore, that it was unnecessary to dissolve it. Plaintiff was held to be entitled to rescission of the agreement for failure of consideration and return of her payment made under the agreement.

Defendant argues further, however, that plaintiff's damages must be limited to the value of the undeveloped land, or $15,000, and that any profits which might have been made by the venture are too speculative to form the basis for a damage award. This argument is without merit. The

trial court concluded that the breach of the agreement became manifest only after defendant informed plaintiff that he had no interest in the property. The rule, as defendant conceded, required the court to put plaintiff in the position he would have been in had the defendant carried out his agreement.

■■ Had defendant performed his agreement, plaintiff would have been, on the date he discovered the breach, the owner of one-half the beneficial interest in a trust holding title to the steel fabrication plant and the land on which it stood. The trial court did not, and need not, have resorted to speculation as to the potential profits from the joint venture. It properly decided that plaintiff's damages would be limited to what was definitely ascertainable as of November 1, 1971. Profits would be excluded from the damage award for the breach of an agreement to form a joint venture only if they were prospective and no means to ascertain them were available. *Levy v. Firks* (1963), 222 Cal. App. 2d 429, 35 Cal. Rptr. 207.

■■ The measure of damages utilized by the trial court, therefore, was correct, and defendant's arguments to the contrary must be rejected.

■■ Finally, defendant argues that the trial court incorrectly added the sum of $10,275 to the valuation of the land and building that formed the basis for the damage award. We agree.

As the trial judge noted in his oral findings of fact, the only evidence on the value of the land and building involved in this action as of 1971 was the testimony of the real estate appraiser, Charles Benson.[5]

Benson was called as a defense witness, qualified as an expert and testified on direct examination that his appraisal of the property was made in late 1971 at the request of Corbett Steel, a prospective purchaser of the premises, and that he had appraised both the steel warehouse building and the land on which it was set. Benson stated that, in his opinion, the value of the property to an investor as of November 1971 was $200,000.

On cross-examination Benson testified that the value of the property to a *user* was $215,000. Plaintiff's attorney also questioned him about the extent of the land involved in the appraisal. Benson stated that the property was about an acre in size. The following exchange then ensued:

"Q: * * * First, would you describe the acre of land that you considered to be included in the Corbett transaction?

A: It's in effect, the same size as Parcel Two noted on this exhibit. [Plaintiff's Exhibit 32, a map of the various parcels.]

Q: Did it have any frontage on Cal Sag Road?

---

[5] The actual appraisal, although in the witness' possession while he testified, was apparently never entered into evidence or marked for identification and in any case is not part of the record on this appeal.

A: Yes, it did.

Q: Well, Parcel Two is the brown parcel.

A: I'm sorry.

Q: Parcel Four is the one in purple.

A: Apparently at the time we did this appraisal we did not have a survey and it was indicated to us that it was about an acre of land and it had frontage on the ——on Cal Sag.

Q: This land for—excuse me—for Corbett's Steel, it had frontage, correct?

A: Yes.

Q: And, you estimated the value of the building at $215,000?

A: Land and building, yes."

The trial court decided that the appraisal had only involved the land included in the landlocked Parcel Two, and that Parcel Four, the property described in the trust agreement signed by plaintiff and defendant's wife, contained 10,275 square feet more than the real estate appraised by Benson. The court accordingly valued the additional land at $10,275 based on the appraiser's estimate of $1 per square foot, and added that sum to the $215,000 appraisal by Benson in order to obtain the total valuation of $225,275 as of November 1971.[6] Plaintiff argues that the exhibit to which Benson referred in his testimony was color coded and easily readable and understandable to a witness of Benson's qualifications, and that this court should not presume a mistake by defendant's own witness.

Our scrutiny of the trial transcript and an examination of the exhibit in question leads to the conclusion that the only possible inference to be drawn from the witness' testimony is that Benson's appraisal was indeed of Parcel Four and therefore included the additional 10,275 feet added by the trial court.

Benson stated that the property he appraised was "[a]bout an acre." Parcel Two comprised approximately 32,600 square feet or about three-quarters of an acre. Parcel Four comprised approximately 43,000 square feet, or about one acre. Benson stated that the property he appraised had frontage on Cal-Sag Road. Parcel Four has frontage on Cal-Sag Road; Parcel Two does not.

Although under cross-examination Benson initially identified Parcel Two as the subject of his appraisal despite his statements that the property had frontage on Cal-Sag Road and was about an acre in size, he corrected this mistake when the discrepancy was pointed out to him by plaintiff's counsel.

---

[6] Defendant raises the additional point that the trial court should not have valued the additional land at $1 per square foot. In view of our conclusion that the appraisal included all of the land in the trust agreement, we need not reach this contention.

We are of the opinion that the initial uncertainty of the witness was easily understandable. Although the exhibit was color coded, the colors used to differentiate Parcels Two and Four are not readily distinguishable. Parcel Two is entirely contained with Parcel Four, and the identifying in symbols of Parcels Two and Four were both written inside Parcel Two. Moreover, the record discloses that the parties and their attorneys were themselves confused about the extent of the land included in the joint venture executory agreement. Plaintiff was asked at one point if there was about three-quarters of an acre of land involved, and he replied, "That is changed two or three times. It is about an acre." At another point the court and the attorneys all agreed that only three-quarters of an acre was involved. Plaintiff's original complaint originally described the real estate contained in Parcel Two. After the trust agreement was introduced, plaintiff's counsel amended the complaint to describe the property included in Parcel Four. Defendant's counsel pointed out that the testimony clearly showed that the land involved was only three-quarters of an acre. Plaintiff's counsel pointed out that the land in the trust agreement was frontage property. However, both agreed that the land in question was not intended to be landlocked. The only nonlandlocked parcel was an acre in size. Finally, defendant also had trouble identifying the parcel, referring to it once on the exhibit as the "blue line" and again as the "purple line," and when asked whether frontage property was included in the agreement stated that he could not remember. In light of all this uncertainty, Benson appears to be one of the least confused witnesses. We are satisfied that the value of $215,000 estimated by the appraiser included Parcel Four and thus also included the 10,275 square feet added by the trial court in its calculation of damages.

Defendant has not disputed the initial $215,000 valuation of the property by the appraiser nor the deductions and expenses which showed that plaintiff's damages, if allowable for defendant's breach, were $25,430.68. He did object to the additional award of $10,275. We have pointed out that award was erroneous.

Although we have found that the judgment is not against the manifest weight of the evidence as to defendant's breach of contract and the measure of damages applied, the judgment in favor of the plaintiff is reversed and the cause remanded with directions to enter judgment for plaintiff in the amount of $25,430.68 plus interest and costs.

Reversed and remanded with directions.

LORENZ, P. J., and SULLIVAN, J., concur.